## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

PLANNED PARENTHOOD OF WISCONSIN, INC.
302 N. Jackson Street
Milwaukee, WI 53202

SUSAN PFLEGER, MD
302 N. Jackson Street
Milwaukee, WI 53202

FREDRIK BROEKHUIZEN, MD
302 N. Jackson Street
Milwaukee, WI 53202

MILWAUKEE WOMEN'S MEDICAL SERVICES
d/b/a AFFILIATED MEDICAL SERVICES
1428 N. Farwell Avenue
Milwaukee, WI 53202

       Plaintiffs,

v.                                                                Case No.:  13-CV-465

J.B. VAN HOLLEN
Attorney General of Wisconsin,
in his official capacity
114 E. State Capitol
Madison, WI 53702

ISMAEL OZANNE
District Attorney for Dane County,
in his official capacity and as representative of a
class of all District Attorneys in the State of Wisconsin
215 S. Hamilton Street, #3000
Madison, WI 53703

JAMES BARR
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI 53703

MARY JO CAPODICE, DO
Medical Examining Board Member,
in her official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

GREG COLLINS
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

RODNEY A. ERICKSON, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

JUDE GENEREAUX
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

SURESH K. MISRA, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

GENE MUSSER, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

KENNETH B. SIMONS, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

TIMOTHY SWAN, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

SRIDHAR VASUDEVAN , MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

SHELDON A. WASSERMAN, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

TIMOTHY W. WESTLAKE, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

RUSSELL YALE, MD
Medical Examining Board Member,
in his official capacity
1400 E. Washington Avenue, Rm. 112
Madison, WI  53703

DAVE ROSS,
Secretary of the Department of Safety and Professional Services,
in his official capacity
55 N. Dickinson St.,
Madison, WI 53703

       Defendants

**COMMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs, by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following:

## PRELIMINARY STATEMENT

1. This action for declaratory and injunctive relief is brought under the U.S. Constitution and 42 U.S.C. § 1983 to challenge the constitutionality of Section 1 of 2013 Wisconsin Act 37 (Senate Bill 206), to be codified at Wis. Stat. § 253.095 ("Act").[1] The Act will unconstitutionally restrict the availability of abortion services in Wisconsin by imposing a medically unnecessary requirement that all physicians who perform abortions have "admitting privileges in a hospital within 30 miles of the location where the abortion is to be performed." Wis. Stat. § 253.095(2). If allowed to take effect, the Act would require Plaintiff Affiliated Medical Services to shut down entirely, and would strip Plaintiff Planned Parenthood of Wisconsin of the ability to provide abortions in Appleton (resulting in the closure of that health center) and severely curtail its ability to provide abortions in Milwaukee. This will make abortion unavailable in Wisconsin after 19 weeks of pregnancy, leave all areas north of Madison without an abortion provider, and severely restrict the availability of abortions in the remainder of the State.

2. The Act was rushed through the Wisconsin Legislature, passing less than 10 days after its introduction on June 4, 2013. The Act, moreover, takes immediate effect on July 8, 2013, even though there is no way for Plaintiffs to obtain the necessary privileges (or even attempt to obtain them) so quickly, in violation of their due process rights under the Fourteenth Amendment. Moreover, by making their ability to provide abortions contingent on their

---

[1] A copy of the Act is attached hereto as Exhibit A.

4

physicians' obtaining admitting privileges at local hospitals, the Act unconstitutionally delegates standardless and unreviewable authority to private parties – the hospitals – also in violation of Plaintiffs' due process rights.

3. In violation of the rights of Plaintiffs' patients, moreover, the Act will eliminate all abortions after nineteen weeks of pregnancy, leave the state with no abortion provider north of Madison, and significantly restrict the availability of services elsewhere in the State, with no health benefit. The purpose and effect of the requirement, which is wholly unnecessary and unreasonable, is to impose a substantial obstacle in the path of women seeking abortion prior to viability, in violation of their constitutional right to privacy.

4. The Act imposes sanctions in the form of civil forfeitures as well as potential civil liability on any person who violates it. In addition, if Plaintiff Pfleger or any other physicians continue to provide abortions without complying with the Act, they would jeopardize their medical licenses.

5. The Act threatens irreparable injury to Plaintiffs and their patients. In addition to violating their constitutional rights, the Act will force Plaintiffs to close clinics and eliminate staff and will cause injury to their livelihoods, as well as their ability to pursue their businesses and professions. The requirement, moreover, will threaten the health of Wisconsin women seeking abortions, and deprive women of their constitutionally protected right to obtain a pre-viability abortion. No remedy is available to them at law.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343(a)(3)-(4).

7.      Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district, and the Defendants, who are sued in their official capacities, carry out their official duties at offices located in this district.

## PARTIES

**A.     Plaintiffs**

9.      Plaintiff Planned Parenthood of Wisconsin, Inc. ("PPW") is a Wisconsin non-profit corporation headquartered in Milwaukee, Wisconsin. PPW provides comprehensive reproductive health care, including family planning services, testing and treatment for sexually transmitted infections, cancer screening and treatment, pregnancy testing and all options counseling, at 24 health centers throughout the state. PPW has provided care in Wisconsin since 1935. At three of its health centers – Milwaukee-Jackson, Madison East, and Appleton North – PPW also provides abortion services. PPW has provided abortions at the Appleton North health center since 1991. PPW sues on its own behalf and on behalf of its staff and patients.

10.     Plaintiff Susan Pfleger, MD, is a board-certified medical doctor specializing in obstetrics and gynecology with over 20 years of experience. She provides abortions at PPW's Milwaukee-Jackson health center and is scheduled to begin to provide abortions in Appleton North in July. Plaintiff Pfleger sues on her own behalf and on behalf of her patients.

11.     Plaintiff Fredrik Broekhuizen, MD, is a board-certified medical doctor specializing in obstetrics and gynecology. He is the Medical Director of PPW. Plaintiff Broekhuizen sues on his own behalf and on behalf of his patients.

6

12. Plaintiff Milwaukee Women's Medical Services d/b/a Affiliated Medical Services ("AMS") provides comprehensive, outpatient reproductive health care services, including abortion services, at its clinic in Milwaukee. AMS sues on its own behalf and on behalf of its staff and patients.

**B.    Defendants**

13. J.B. Van Hollen is the Attorney General of the State of Wisconsin. As Attorney General, Defendant Van Hollen has statutory authority to prosecute forfeitures as a special prosecutor when requested by a district attorney (*see* Wis. Stat. § 978.045) and may assert that he has the independent authority to prosecute forfeiture actions for alleged violations of the Act. He is sued in his official capacity.

14. Ismael Ozanne is the elected District Attorney for Dane County, Wisconsin. As District Attorney, Defendant Ozanne has the authority to prosecute violations of the Act. *See* Wis. Stat. §§ 978.05(1) & (2). He is sued in his official capacity and as a representative of a class of the 71 elected district attorneys representing each of Wisconsin's counties. Forfeiture actions under the Act could be brought in any county. The class is so numerous that joinder of all members as defendants is impracticable. The named defendant Ismael Ozanne, the Dane County District Attorney, will fairly and adequately protect the interests of the class. Certification of a class of district attorneys with Ismael Ozanne as the class representative is therefore warranted.

15. Defendants James Barr, Mary Jo Capodice, DO, Greg Collins, Rodney A. Erickson, MD, Jude Genereaux, Suresh K. Misra, MD, Gene Musser, MD, Kenneth B. Simons, MD, Timothy Swan, MD, Sridhar Vasudevan, MD, Sheldon A. Wasserman, MD, Timothy Westlake, MD, and Russell Yale, MD, are all members of the Medical Examining Board of

7

Wisconsin. The Medical Examining Board has the authority to impose disciplinary sanctions, up to and including medical license revocation, on Wisconsin physicians for unprofessional conduct, which is defined to include violations of state law. *See* Wis. Stat. § 448.02(3); Wis. Admin. Code MED § 10.02(2)(z). The above-listed defendants are sued in their official capacities as members of the Medical Examining Board.

16. Defendant Dave Ross is the Secretary of the Department of Safety and Professional Services. The Department of Safety and Professional Services has the statutory authority to commence investigations into the conduct of licensed professionals, in particular, physicians, to determine if they have violated any state law, rule, or regulation that governs the practice of medicine. *See* Wis. Stat. § 440.03; *id.* § 448.02. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

A.  **Abortion in Wisconsin**

17. Legal abortion is one of the safest procedures in contemporary medical practice. Abortion complications are exceedingly rare: nationwide, less than 0.3% of abortion patients experience a complication that requires hospitalization. Plaintiffs' hospitalization rates are even lower.

18. On information and belief, there are only five clinics in Wisconsin where women can obtain safe abortions. Plaintiff PPW operates three of those health centers, in Appleton, Madison, and Milwaukee. The fourth clinic is AMS's clinic in Milwaukee. The fifth clinic, in Green Bay, will cease to provide abortion services as of August 1, 2013, for reasons unrelated to the Act.

19. Women seek abortions for a variety of reasons, including familial, medical, financial, and personal. Some women have abortions to preserve their life or their health; some

because they have become pregnant as a result of rape; and others because they choose not to have biological children. Some women who seek abortions, particularly those who seek them after 18-20 weeks of pregnancy, do so because the fetus has been diagnosed with a medical condition or anomaly.

20. Approximately one in three women in this country will have an abortion by age 45. Most women having abortions (61%) already have at least one child, and 66% plan to have children when they are older, financially able to provide necessities for them, and/or in a supportive relationship with a partner so their children will have two parents.

21. Even though abortion is extremely safe, Plaintiffs are prepared to provide high quality care in the rare event of complications. In fact, most complications related to abortion are safely and appropriately managed in the clinic setting.

22. In the exceedingly rare event that a patient needs to be transferred via ambulance from one of the health centers to a hospital, the EMTs who take charge of the patient will transport her to the closest hospital, at their discretion. Consistent with the recognized standard of care and to ensure continuity of care, Plaintiffs' physicians will communicate with the emergency room physician and/or the on-call ob-gyn at the hospital where the patient is received, and those hospital physicians will involve other physicians at the hospital as is necessary and appropriate.

23. Complications from abortion are not only rare, but the few complications that do occur may not present until after a patient has left the clinic. Plaintiffs provide their patients upon discharge with phone numbers to call if they experience complications or have concerns at any time, day or night, after they have left the clinic. In most cases, the patients' concerns or complications can be addressed over the phone by a qualified health care professional, or

through a return visit to the clinic. In the rare instances where additional or after hours care is required, Plaintiffs' staff will refer the patient to a local emergency room, as is also consistent with the standard of care.

24.     More than 80% of the patients who obtain abortions at PPW's Appleton North health center come from outside Outagamie County, where the health center is located; nearly 40% of the abortion patients at PPW's Milwaukee-Jackson health center come from counties outside the Milwaukee area. A significant number of AMS's patients also come from outside the Milwaukee area. In the rare event of a complication that occurs after the patient has left the clinic, the patient will be referred, consistent with the standard of care, to a hospital in her area, rather than a hospital near the clinic, making it completely irrelevant whether the abortion provider has admitting privileges at a hospital close to the clinic.

25.     In contemporary medical practice, there is an increasing divide between inpatient and outpatient medicine, with inpatient care handled more and more often by physicians who regularly or even exclusively provide care in hospital settings. In the exceedingly rare event of an abortion complication that requires hospitalization, the physician who provides the abortion may not in fact be the appropriate physician to manage the patient's care in the hospital.

26.     Requiring abortion providers to have hospital admitting privileges, therefore, does not increase patient safety and is medically unnecessary.

**B.     The Act and Its Impact**

27.     Despite the lack of medical necessity for an abortion provider to have admitting privileges near the clinic, the Act was rushed through the legislature, and, on July 5, 2013, Governor Walker signed it into law. The Act will take effect on July 8, 2013.

28. The Act provides that no physician may perform an abortion "unless he or she has admitting privileges in a hospital within 30 miles of the location where the abortion is to be performed." Wis. Stat. § 253.095(2). "Abortion" is defined as "the use of an instrument, medicine, drug or other substance or device with intent to terminate the pregnancy of a woman known to be pregnant," *id.* § 253.10(2)(a), which encompasses the abortions that Plaintiffs perform.

29. Any "person" who violates the Act is subject to civil forfeiture penalties of between $1,000 and $10,000. *Id.* § 253.095(3).

30. Plaintiffs could also be subject to civil suits for damages for "personal injury and emotional and psychological distress" as a result of performing or attempting to perform an abortion in violation of the Act. *Id.* § 253.095(4). The Act provides that such suits may be brought by a "woman on whom an abortion is performed or attempted," the "father of the aborted unborn child or the unborn child that is attempted to be aborted," or "any grandparent of the aborted unborn child or the child that is attempted to be aborted." *Id*.

31. If Plaintiffs Pfleger or Broekhuizen fail to comply with the Act and Wisconsin Administrative Code MED § 10.02(2)(z) (and Wis. Stat. § 448.02(3)), they face investigation by the Department of Safety and Professional Services, which conducts investigations of and issues complaints against physicians suspected of violating Wisconsin's statutes and administrative rules related to the practice of medicine, and may be subjected to professional discipline thereafter by the Medical Examining Board, up to and including license revocation.

32. The Act was opposed by the leading medical associations, including the Wisconsin Medical Society, Wisconsin Association of Local Health Departments and Boards,

Wisconsin Academy of Family Physicians, Wisconsin Hospital Association, and the Wisconsin Public Health Association.

33. None of the physicians who provides abortions at PPW's Appleton North health center has admitting privileges at a hospital within 30 miles of the health center. Two of the physicians who provide abortions at PPW's Milwaukee-Jackson health center, including Plaintiff Pfleger, also do not have admitting privileges at a hospital within 30 miles of that health center; these two physicians provide approximately half of the abortions at that health center. The physicians who perform abortions for Plaintiff AMS also lack privileges within 30 miles of AMS's clinic.

34. Although Plaintiffs have worked diligently since they learned of the Act to attempt to obtain applications and bylaws from the potentially relevant hospitals, they have not been able to obtain those materials from every hospital, nor have they had the time to consider whether they can meet the various hospitals' requirements or assess where they should submit applications. While Plaintiffs' physicians, including Plaintiff Pfleger, have begun the process of submitting applications, they do not have enough time to complete this process, nor to allow the hospitals to consider and decide those applications before the Act takes effect. The process of applying for privileges and receiving a decision from a hospital on such an application can and generally does take months.

35. It is not yet clear whether Plaintiffs' physicians who do not currently have privileges that meet the Act's requirements will eventually be able to obtain them. It is common for hospitals to grant privileges only to physicians who can guarantee at least a minimum number of hospital admissions each year (meaning a certain number of their patients will *require* hospitalization), and/or who reside and/or practice near the hospital, so that they

can provide on-call coverage for their fellow staff-physicians and otherwise participate as a member of the hospital staff.  Such a requirement relating to number of hospital admissions each year would be impossible for Plaintiffs' physicians to satisfy, because abortion is a very safe procedure and complications requiring hospitalization are extremely rare.  And in the case of PPW's physicians providing abortions in Appleton, it would be impossible to satisfy a residency requirement, as PPW's physicians travel from elsewhere in Wisconsin to provide care in this under-served area.

36. Some hospitals also require physicians applying for privileges to submit one or more letters of reference from a physician in the same specialty who already has privileges at that hospital and/or to identify a physician who already has privileges at that hospital who will provide back-up care if necessary.  These requirements are also difficult, if not impossible, for Plaintiffs' physicians to satisfy because they may not have relationships with doctors in the same specialties at the relevant hospitals, and even if they did, they likely will be unable to identify any physicians willing to publicly support their applications because of their fear of being harassed by anti-abortion activists and fear for their physical safety.

37. Additionally, some hospitals, for political, ideological, or religious reasons, may be unwilling to grant admitting privileges to physicians whose practice includes providing abortion services.

38. If the Act takes effect, Plaintiff AMS will shut down entirely.  Plaintiff Planned Parenthood of Wisconsin will be unable to provide abortions in Appleton (resulting in the closure of that health center) and will be required to severely curtail abortions in Milwaukee. The Act, therefore, will make abortion unavailable in Wisconsin after 19 weeks of pregnancy,

leave all areas north of Madison without an abortion provider, and severely restrict the availability of abortions in the remainder of the State.

39.     After the closures of AMS and Appleton North (as well as the Green Bay provider on August 1), only two abortion clinics will remain – PPW's Milwaukee-Jackson (operating on a reduced schedule) and Madison East health centers.

40.     If the Act is allowed to go into effect, these two remaining health centers will have difficulty managing the increased volume of patients.  Patients trying to access services at those health centers would experience very significant scheduling delays:  up to two or three weeks, or longer, to schedule the initial counseling appointment, and another one to two weeks more for the abortion procedure.

41.     If they can schedule an appointment at one of the remaining centers, women who would have obtained an abortion at PPW's Appleton North health center would be forced to travel a significant distance – some more than 200 miles roundtrip – and they will need to make that trip twice because of a state law requirement that requires two trips (the first for counseling and then a second visit, at least 24 hours later, for the abortion) to obtain an abortion in the state.

42.     Wisconsin does not require other similarly-situated health care providers to have admitting privileges at a local hospital.  Physicians perform similar outpatient procedures in their offices without admitting privileges.  Nor are physicians who provide services at ambulatory surgery centers, in which more complicated and riskier procedures are regularly performed, required to have them.

C. **Irreparable Injury**

43. Plaintiffs and their patients will suffer irreparable harm from the violation of their constitutional rights if the Act goes into effect.

44. The Act will force Plaintiffs to close health centers and eliminate staff positions, and will prevent them from providing comprehensive reproductive health care to their patients, with resulting loss of patients and patient trust. Plaintiff Pfleger will suffer loss of income and injury to her ability to practice her profession and provide comprehensive health care to her patients.

45. The Act will jeopardize women's health, shutting down health centers that provide abortions without medical justification, and severely limiting the availability of abortions in the state.

46. Women will lose access in Wisconsin to safe abortion after 19 weeks of pregnancy. In some cases, due to significant delays in scheduling an abortion because of the reduced availability of abortion in the state, women who are earlier in their pregnancies will also be unable to obtain abortions; even those who can be seen in time will still face significant and possibly dangerous delays. For still other women, the additional travel required to the remaining providers will increase the costs and delay the abortion. Although abortion is one of the safest surgical procedures, the risk of complications (as well as the cost of the procedure) increases as the pregnancy advances. Given that many of Plaintiffs' patients are low-income, the increased costs alone will make it impossible for some women to obtain an abortion.

47. The Act will therefore irreparably harm Plaintiffs' patients in two ways: threatening the health of women seeking abortions, and depriving women of their constitutionally protected right to obtain a pre-viability abortion.

## CLAIMS FOR RELIEF

### COUNT I
### (Procedural Due Process)

48. The allegations of paragraphs 1 through 47 are incorporated as though fully set forth herein.

49. The Act violates Plaintiffs' rights not to be deprived of liberty and property without due process of law in violation of the Fourteenth Amendment to the U.S. Constitution.

### COUNT II
### (Due Process – Non-Delegation)

50. The allegations of paragraphs 1 through 47 are incorporated as though fully set forth herein.

51. The Act violates the rights of Plaintiffs to due process under the Fourteenth Amendment to the U.S. Constitution. It makes Plaintiffs' ability to maintain their businesses and pursue their chosen professions contingent on physicians' obtaining admitting privileges at local hospitals, and thereby unconstitutionally delegates standardless and unreviewable authority to private parties.

### COUNT III
### (Substantive Due Process – Right to Privacy)

52. The allegations of paragraphs 1 through 47 are incorporated as though fully set forth herein.

53. The Act violates Plaintiffs' patients' right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution. It is an unreasonable health regulation, and it has the unlawful purpose and effect of imposing an undue burden on women's right to choose abortion.

## COUNT IV
### (Substantive Due Process)

54.  The allegations of paragraphs 1 through 47 are incorporated as though fully set forth herein.

55.  The Act violates Plaintiffs' due process rights by requiring them to comply with the Act's admitting privileges requirement, which is not rationally related to any legitimate state interest.

## COUNT V
### (Equal Protection)

56.  The allegations of paragraphs 1 through 47 are incorporated as though fully set forth herein.

57.  The Act violates equal protection by treating Plaintiffs differently from other similarly situated health care providers without a sufficient state interest.


WHEREFORE, Plaintiffs respectfully request that the Court:

1. declare Section 1 of 2013 Wisconsin Act 37 (Senate Bill 206), to be codified at Wis. Stat. § 253.095, unconstitutional under the Fourteenth Amendment to the United States Constitution;

2. without bond, enjoin Defendants, their employees, agents, and successors in office from enforcing Wis. Stat. § 253.095;

3. award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. grant Plaintiffs such other, further, and different relief as the Court may deem just and proper.

Respectfully submitted this 5th day of July 2013.

**CULLEN WESTON PINES & BACH LLP**

*/s/ Lester A. Pines*
Lester A. Pines, SBN 1016543
122 West Washington Avenue, Suite 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
pines@cwpb.com

Carrie Y. Flaxman*
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
(202) 973-4800 (telephone)
(202) 296-3480 (facsimile)
carrie.flaxman@ppfa.org

Roger Evans*
Planned Parenthood Federation of America
434 West 33rd Street
New York, NY 10001
(212) 541-7800 (telephone)
(212) 247-6811 (facsimile)
roger.evans@ppfa.org

*Attorneys for Plaintiffs Planned Parenthood of Wisconsin, Inc., Susan Pfleger, MD, and Fredrik Broekhuizen, MD*

Laurence J. Dupuis, SBN 1029261
ACLU of Wisconsin Foundation, Inc.
207 E. Buffalo St., #325
Milwaukee, WI 53202
(414) 272-4032, ext 212 (telephone)
(414) 272-0182 (facsimile)
ldupuis@aclu-wi.org

Alexa Kolbi-Molinas*
Susan Talcott Camp*
American Civil Liberties Union Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633 (telephone)
(212) 549-2651 (facsimile)
akolbi-molinas@aclu.org
tcamp@aclu.org

*Attorneys for Plaintiff Milwaukee Women's Medical Services d/b/a Affiliated Medical Services*

*\*motion for admission pro hac vice forthcoming*

19